SIGNED.

Dated: December 12, 2012



*Randolph J. Haines*
**Randolph J. Haines, Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SUNNYSLOPE HOUSING LIMITED PARTNERSHIP, | ) ) ) | CASE NO. 2:11-bk-02441-RJH |
| | ) | MEMORANDUM DECISION |
| Debtor. | ) | RE VALUE OF LIHTC |
| _____ | ) | |

After trial on December 6, 2011, this Court found the value of First Southern's interest in its collateral, for purposes of Bankruptcy Code § 506(a), to be $2.6 million. That value was essentially the value of the Debtor's real property plus improvements, but not including the value of the Low Income Housing Tax Credits, because the evidence conclusively demonstrated that First Southern had no lien on the LIHTC's, so their value could not be included for purposes of § 506(a). After trial on February 29 and March 1, 2012, the Court confirmed the Debtor's plan of reorganization utilizing that $2.6 million value as the amount of First Southern's secured claim.

On appeal, the District Court affirmed this Court's finding of the value of the real property and many other findings and conclusions necessary for the confirmation of the Debtor's plan of reorganization, but reversed and remanded for this Court to make a determination of the "value of the remaining tax credits" to be included as part "of the value of First Southern's collateral under § 506(a)."

The District Court's order of remand was issued on September 18, 2012. Although it was appealed to the Ninth Circuit by First Southern, First Southern did not seek a stay pending appeal, nor has the District Court's order been stayed. Consequently this Court held a trial on December 10 to determine the value of the remaining LIHTCs.

The one day trial consisted of testimony from expert witnesses for each side, accompanying their previously submitted expert reports. Debtor's expert was Beth Mullen, CPA, partner of CohnReznick, LLP, and First Southern's expert was Jon Krabbenschmidt of Novogradac & Company, LLC.

The Court finds and concludes that both experts were highly qualified to provide their expert opinions on the value of the LIHTCs. Indeed, both parties agreed that these are among the most highly skilled and respected experts in the field.

Both experts agreed on the remaining dollar amount of the tax credits. Debtor's expert's report reflected the total remaining tax credits as of January 1, 2013, to be $3,178,340, and First Southern's expert's report reflected the remaining amount of tax credits as of November 30, 2012, to be $3,223,337, and that that amount declines by $41,000 per month.

Both experts also agreed that almost all of the market for LIHTCs is provided by corporate institutional investors. Indeed, they agreed that the five largest banks in the country alone make up about 50% of that market. They also agreed that those institutional investors are currently paying for newly issued LIHTCs from the mid to high $.90s per dollar of available tax credit. Both experts also agree, however, that such institutional investors would have no interest in buying this Debtor's remaining mid-stream tax credits.

Where they differ dramatically, however, was in their assessment of the available market for this Debtor's remaining mid-stream tax credits, and what price could be expected to be obtained for them. First Southern's expert testified that a market exists for tax credits like the Debtor's, consisting of approximately 5% of the total market for LIHTCs. He also testified that such non-traditional investors were included in the Navogradac survey, and therefore could be expected to pay at the lower end of the range reported in that survey. His report, however, actually uses the 0.935 discount factor for the value of the Debtor's tax credits, which is the "average price paid by investors for LIHTCs-September 2012 (most recent data)," to arrive at his conclusion that the Debtor's LIHTCs are currently worth $2.96 million.

The Debtor's expert, in stark contrast, testified that no market exists for tax credits like the Debtor's, and that because the potential market for them could not exceed 2% of the

total market, she only gave a 2% weight to the discounted cash flow analysis, to arrive at an estimated fair market value of $26,144.

The Court finds and concludes that both experts' conclusions are deficient and that neither, standing alone, provides a good estimate of the fair market value of the Debtor's LIHTCs.

The Debtor's expert's report is superior in one respect, in that it relied to some extent on an actual market survey based upon the actual characteristics of the Debtor's remaining LIHTCs. These circumstances included the fact that there is no general partner guarantee of the tax credits, and the fact that First Southern's receiver had terminated compliance with the LURA and actually instructed the State of Arizona to notify the IRS that the project was no longer in compliance with theLIHTC rules and regulations as of October, 2010. They also included the fact that an appeal of the confirmation order was pending and further appeals to be expected. The facts also included that the State of Arizona had issued a form 8823 report of noncompliance, and had not issued a report finding the noncompliance to be corrected.

Unfortunately, however, the Debtor's expert's market survey was far too small to be conclusive, and indeed included only one response from a non-traditional investor. More significantly, however, is the lack of any justification for giving only a 2% weight to the discounted cash flow analysis simply because the potential market for the Debtor's LIHTCs is only 2% of the total market. And the Debtor's expert may simply have been factually wrong in assuming that the general partner cannot be replaced, or that the debt terms could not be renegotiated with the lender, or that those assumed facts necessitated an even further discount to the value.

But First Southern's expert's report was equally if not more deficient. It contained absolutely no attempt at a market survey to determine the value or investor interest in LIHTCs like the Debtor's. The expert utilized either the mid-value or low end of the range of prices paid by institutional investors for newly issued LIHTCs with tax credit credit guaranties, despite the lack of any evidence that the small market of non-traditional investors were even within that

3

range. The First Southern's expert analysis was deficient in failing to take into account any risk factor based on the lack of a tax credit guarantee, or the fact that this is a mid-stream deal and clearly non-investment grade. First Southern's expert testified he had never seen a LIHTC being marketed after a lender had obtained appointment of a receiver who had terminated compliance with the LURA and had notified the state agency to report to the IRS that the project was no longer compliant, because he did not believe that a lender's receiver would have authority to do that. These facts, or rather the failure to consider the significance of these facts, takes the value of these LIHTCs entirely out of the range of values that were considered by First Southern's expert. And he simply assumed away the risks of the existing bankruptcy and the existing and expected future appeals.

Another flaw in First Southern's expert's analysis is that he essentially double counted the value of tax benefits flowing from owning the property other than LIHTCs. He testified that an owner who is purchasing a LIHTC is also purchasing an interest in real property that carries with it other tax benefits, such as depreciation and interest expense deductions, as well as other non-tax benefits such as appreciation in the value of the real property. Therefore his analysis of the value of LIHTCs included these other values, and he estimated that the depreciation and interest deduction alone for this project would be in the range of $300,000 per year, compared to the LIHTC benefit of approximately $500,000 per year. But this is double counting because these other tax benefits exist for all income producing property regardless of whether LIHTCs are associated with it, and therefore these values have already been accounted for when the Court determined the value of the real property.

These deficiencies in First Southern's expert's analysis render it almost useless in determining the current fair market value of the Debtor's LIHTCs. It amounts to little more than adding up the total future amount of tax credits and then discounting that to present value, while ignoring virtually all of the salient risk factors.

While neither expert's ultimate conclusion of value is persuasive, the Court finds and concludes that the best evidence of the value of the remaining LIHTCs is $1.3 million. This is largely derived from the Debtor's expert's discounted cash flow analysis using a discount

4

1  factor of 30%. The Court recognizes the number may be slightly off because the expert's use of
2  Excel may have generated a different number than widely accepted discount tables would yield.
3  The Court also recognizes that some of the factors the expert relied on for that 30% discount
4  factor may not actually exist. On the other hand, it is not clear that she accounted for *all* of the
5  risk factors she identified when arriving at that 30% discount factor. And her better
6  understanding of the actual market for LIHTCs with characteristics like the Debtor's makes her
7  conclusion of a 30% discount factor more sound and reliable, and inclusive of all relevant risk
8  factors, than First Southern's failure even to consider those risk factors. The Court finds and
9  concludes that based on all of the evidence, the lack of tax credit guarantees, the pendency and
10 expectancy of appeals, the lack of certified compliance with the LURA, and most importantly
11 the lender's hostility and intentional termination of LURA compliance, all necessitate a very
12 large discount factor. Indeed, the 30% discount factor may not be large enough to account for
13 all those risks, but the Court finds and concludes that it is the best evidence of a discount factor.
14      The Court therefore finds and concludes that the remaining value of the LIHTCs as
15 of January 1, 2013, is $1.3 million.
16      DATED AND SIGNED ABOVE